UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, Plaintiff,

v.

$572,204 IN UNITED STATES CURRENCY; Defendant.

WINSTON H. CONKLING, Claimant.

Civil Action No. 07-11194-MBB

**GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

Claimant Winston Conkling (Claimant), the owner of a truck and horse trailer (together, the Trailer) that were stopped on Interstate 90 by a Massachusetts State Police Trooper, seeks to challenge the stop and the subsequent search of the Trailer under the Fourth Amendment. However, as demonstrated below, neither the stop nor the subsequent search violated Claimant's right to be free from unreasonable governmental intrusion. Accordingly, Claimant's motion to suppress should be denied, and this case should proceed to discovery, dispositive motions, and, if necessary, trial.

**NO EVIDENTIARY HEARING IS APPROPRIATE**

In a motion to suppress, it is movant's burden to demonstrate that facts are in dispute. United States v. Jiminez, 419 F.3d 34, 42 (1st Cir. 2005). United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) ("the [movant] must show that there are factual disputes which, if resolved in his favor, would

entitle him 7.1(B)(1). Claimant has not set forth any such dispute.[1] Therefore, under clear First Circuit law, there is no basis for an evidentiary hearing. Staula, 80 F.3d at 603 ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record); United States v. LaBonte, 70 F.3d 1396, 1412-13 (1st Cir. 1995) (a district court need not convene an evidentiary hearing when presented with "no more than conclusory prognostications and perfervid rhetoric"); United States v. Lilly, 983 F.2d 300, 310-11 (1st Cir. 1992); United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990).

Accordingly, the Court should decide this case based on the undisputed facts, set forth in the Affidavit of Jeff Commander, Docket Entry 1-2, (the Commander Affidavit) and synopsized in the Claimant's motion.[2]

---

[1]Claimant's only affidavit is the legal conclusion of Claimant's attorney that the facts alleged by the government did not support a legal search. Docket 16, ¶ 3. Nothing in this affidavit disputes the facts set forth under oath in the Complaint and supporting Affidavit. See Docket 16, passim.

[2]The government has compared the "Anticipated Facts" set forth in Claimant's motion (hereafter "Claimant's Facts" or CF) with the Commander Affidavit or CA, and notes that Claimants Facts are [despite some clerical errors] a fair synopsis of the facts set forth in the Commander Affidavit. The government therefore will not recite the facts again here, but instead sets out the relevant facts in part B, below.

**ARGUMENT**

Fourth Amendment rights are personal and cannot be vicariously asserted. United States v. Salvucci, 448 U.S. 83, 85-87(1980) (person who challenges the legality of a search must establish that he, himself, was the victim of an invasion of privacy); Alderman v. United States, 394 U.S. 165, 171-72 (1969)(suppression can be urged only by those whose rights were violated and not by those who are aggrieved only by the introduction of damaging evidence). Therefore, in order to move to suppress the fruits of a search or seizure, the movant must demonstrate that his own rights to free from governmental intrusion were affronted. United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998); United States v. Kimball, 25 F.3d 1, 5 (1994) (citing United States v. Soule, 908 F.2d 1032, 1034 (1st Cir. 1990) (citing Rakas v. Illinois, 439 U.S. 128, 131 n. 1 (1978). Although this is not technically a question of “standing,” nevertheless, the term standing is used by courts as a shorthand method of referring to the question of whether the movant’s own Fourth Amendment rights were implicated by the challenged governmental action. Kimball, 25 F.3d at 5 n.1. The burden is on the movant, not the government, to show standing – i.e., that his own rights, not the rights of a third party to the proceeding, were violated.

Here, Claimant challenges two governmental actions related to the Trailer: (1) the stop and (2) the search. However, as

demonstrated below, Claimant has no standing to challenge the stop of the Trailer.

**(A) Only the *Occupants* of a Stopped Vehicle Suffer a Fourth Amendment Deprivation.**

It is well established that a police officer's act of stopping a vehicle and detaining its occupants constitutes a seizure under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). As explained by the First Circuit in Kimball, 25 F.3d at 5, all occupants of a vehicle have a cognizable Fourth Amendment interest during a traffic stop. However, as the First Circuit made clear, the interest is triggered by being personally present, personally detained, and therefore being personally affected. Id. Traffic stops cause anxiety to the persons in the vehicle. Id., citing Prouse, 440 U.S. at 657. Further, "the interest in freedom of movement and the interest in being free from fear and surprise are personal to all occupants of the vehicle." Id. The occupants "have their travel interrupted by the sight of a state police cruiser or police car looming large in the rear mirror, have their identifying documents inspected by the trooper or policeman, and may even be asked to leave [the] vehicle . . . " Id.

By contrast, persons who are not occupants of the vehicle suffer none of these intrusions. An owner of contraband stashed in a vehicle, an owner of a vehicle, or an owner of a vehicle and its contraband is not personally affected by a vehicle stop if he

is not personally present at the stop at the time it occurs. The purpose of a stop, its duration, the number of officers present, whether the occupants are required to leave the vehicle or can stay in it – these factors, often critical to whether an investigatory stop exceeds Fourth Amendment authority, do not impact persons who are not physically present. For that reason, such persons have not suffered a Fourth Amendment deprivation, and they therefore do not have "standing" to challenge the stop.

The Seventh Circuit addressed this question squarely in United States v. Powell, 929 F.2d 1190, 1194 (7th Cir. 1991), where the owner of a pickup truck attempted to challenge the stop of the truck for a traffic law infraction. Id. at 1192-94. The owner had entrusted the truck to another person, who was stopped by a state trooper for changing lanes without signaling.[3] Id. at

---

[3]In Powell, the Seventh Circuit concluded that the failure to signal was not actually a traffic infraction, and therefore in that case, the stop was in fact improper – but only violated the rights of the persons actually in the vehicle. Id. at 1994. In the instant case, the uncontroverted facts are that the driver of the Trailer was weaving, and he admitted that he was weaving. Claimant's Facts at ¶ 15; Commander Affidavit at ¶ 21. Moreover, law enforcement officers had surveilled the Trailer for the prior two days and observed conduct that was consistent with the distribution of controlled substances and the collection of drug proceeds occurring by persons with prior drug trafficking records. Claimant's Facts at ¶ 12, ¶6; Commander Affidavit at ¶ 18, ¶ 12. These facts clearly justified stopping the Trailer. The driver's nervousness and visible shaking when asked simple questions, together with his false answers to those questions, justified prolonging the stop. Claimant's Facts at ¶ 16; Commander Affidavit at ¶ 22. Trooper Kane then had his K-9, Riggs, a certified narcotics dog since 2002, walk around the Trailer. Claimant's Facts, ¶ 18 & n.1; Commander Affidavit ¶ 25 (continued...)

1191-92. At the time of the stop, the owner was more than one thousand miles away. Id. at 1195. On this basis, the Seventh Circuit concluded that the owner had not suffered any constitutionally cognizable injury by the stop of his truck. Undertaking the same analysis as the First Circuit did in Kimball, supra, the Seventh Circuit noted that a motorist has an interest in the "freedom from random, unauthorized, investigatory seizures" and an interest in avoiding the "'substantial anxiety'" such stops may create. Id. citing Prouse, 440 U.S. at 657. However, because of the nature of the intrusion, the Seventh Circuit concluded that it is inherently "personal to those in the car when it occurs." Id. As the Seventh Circuit explained:

> The personal nature of the interests implicated by a vehicle stop persuade us that a vehicle owner who is not in his car at the time it is stopped should not, absent unusual circumstances not present in this case, having standing to object to the stop.

Id. The Seventh Circuit recognized that under some extraordinary circumstance, a stop might implicate an owner's possessory interests, but found that that was not present in the case before it, because the owner was over 1,000 miles from the point of the stop. "The only anxiety the stop caused [the owner] came with

---

[3](...continued)
& n.1. A dog sniff on the exterior of a vehicle at a traffic stop "does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005). Accordingly, while Claimant has no Fourth Amendment right to challenge the stop, the government submits that the stop was in fact wholly lawful.

the knowledge that the [fruits obtained from the search that took place after the stop] were used as the basis for [the owner's] arrest and might be introduced as evidence against him at trial." As such, the truck owner's motion to suppress the evidence was nothing more than an "'attempt to vicariously assert violations of the Fourth Amendment rights of others' that Alderman and its progeny have condemned." Id. at 1196.

Judge Saris addressed similar facts in United States v. Ruiz, 345 F. Supp.2d 171, 173 (D. Mass 2004). In Ruiz, two persons had borrowed a motor home for a cross country trip from Arizona to Vermont. Id. They were stopped for a traffic violation in Missouri, and as a result, more than three hundred pounds of marijuana was found in a closet in the motor home. Id. An owner of the motor home, Ruiz, was charged with drug trafficking as a result and sought to challenge the stop. Id. Judge Saris held that Ruiz had no standing to challenge the stop, because he had been in court in another state at the time that it occurred, and therefore, he did not have "a legitimate expectation of privacy 'in using the highways undisturbed by random and intrusive police action and the anxiety it causes.'" Id. (quoting Powell with approval). See also United States v. $1,790,021 in U.S. Currency, 261 F. Supp. 2d 310, 314-16 (M.D. Pa. 2003)(Claimant had no right to suppress traffic stop, where Claimant was not present at the stop, and therefore had no legitimate expectation of privacy in the stopped vehicle).

Likewise, in the case at bar, Claimant has not – and cannot – set forth any reason that the brief stop of the Trailer (prior to its search) interfered with Claimant's interest in the Trailer. According to the only evidence in the record, the owner of the Trailer "flew back to Colorado from Boston" before the stop, and was therefore more than 1,000 miles from the stop at the time that it occurred. See Claimant's Facts ¶ 17; Commander Affidavit ¶ 23. The portion of the events of the stop that occurred before the Trailer was searched simply had no impact on the Claimant. The only anxiety the stop produced for Claimant occurred after Trooper Kane told Claimant that he had seized money from the Trailer. See Commander Affidavit ¶ 27.

Accordingly, Claimant's personal Fourth Amendment rights were unaffected by the stop of the Trailer, he has no right to challenge it through a suppression motion.

**(B) Trooper Kane Had Probable Cause to Search the Trailer.**

As owner of the Trailer, Claimant does have a Fourth Amendment right to challenge its search. Powell, 929 F.2d at 1196. However, that challenge fails because "[a] warrantless search of an automobile will be upheld if 'officers have probable cause to believe that the vehicle contains contraband.'" United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004). The inquiry focused on what the law enforcement agents knew at the time that they searched the car. Id.

By the time the Trailer was searched, law enforcement

officers were aware of the following:

- At 2:55 a.m. the previous day, the Trailer’s owner had paid cash for a room at the Hampton Inn Hotel in Braintree, MA (Hotel). CA ¶13
- The Trailer’s owner had taken out a second room at the Hotel 12 hours later, also with cash, but checked out without appearing to use the room. CA ¶¶13-14
- When the Trailer’s owner checked out, the Trailer registered in his name was left in the parking lot. CA ¶¶14-15
- A UHaul picked up someone who was lingering near the Trailer. CA ¶ 9
- A convicted drug trafficker arrived at the Hotel driving a rental car, carrying a duffel bag, and attempted to call the Trailer’s owner. When he was unsuccessful, he immediately left the Hotel with the same duffel bag and drove away. CA ¶¶11-12
- A Land Rover arrived and the occupants took 2 or 3 duffel bags out of the Land Rover and placed them in the Trailer. CA ¶15
- The convicted drug trafficker returned, drove up next to the Trailer, and gave one of the Land Rover’s occupants a duffel bag, which he immediately placed into the Trailer. CA ¶16
- The Trailer was surveilled nearly continuously until it was pulled over in a traffic stop by Trooper Kane. CA ¶¶17-20
- The driver of the Trailer was not the Owner. Cf. CA ¶21, CA ¶8
- The driver was nervous and visibly shaking. CA ¶22
- The driver lied in response to simple questions. CA ¶¶22
- The driver professed not to know what was in the Trailer, while asserting “This is getting bad.” CA ¶23
- When the Trooper asked about the side door of the Trailer, the driver became exceedingly nervous and swore, stating “Oh (expletive) this is bad.” CA ¶24
- Riggs, a narcotics dog who has been certified annually for five years and who has successfully

> found narcotics with exterior alerts over the past five years and whose reliability has not been challenged, alerted to the side door of the Trailer. CA ¶25

Under the totality of the circumstances, the above facts constitute probable cause to search the Trailer. K-9 Riggs' alert alone arguably justified the search. "[A] reliable canine sniff outside a vehicle can provide probable cause to search the vehicle." United States v. Brown, 500 F.3d 48, 57 (1st Cir. 2007); United States v. Lopez, 380 F.3d 538, 544 (1st Cir. 2004)(a reliable drug dog alerting suggests that drugs are present but concealed). See also United States v. Brito-Melo, 05-10227-PBS, Docket Entry 65 (slip opinion at page 18 of 22), 2006 WL 2559860 *8 (Sept. 5, 2006) (concluding that Riggs, the dog at issue here, was a "properly trained and reliable drug detection dog," and indicating "A dog alert creates general probable cause to search a vehicle.")(citing United States v. Rosborough, 366 F.3d 1145, 1153 (10th Cir. 2004).

Here, in addition to the alert by Riggs, law enforcement officers had surveilled the Trailer and persons associated with it for two days and concluded that their activities were consistent with the distribution of drugs and collection of drug proceeds. CA ¶¶ 2-3, 18. They had observed duffel bags associated with this activity being loaded into the Trailer. CA ¶¶ 15-16. Arguably, this alone – even prior to the alert by K-9 Riggs – would have provided probable cause. However, in addition, the driver of the

Trailer was exceedingly nervous, lied, and his demeanor during the stop changed when he was asked about the side door to the Trailer. CA ¶¶ See Brown, 500 F.3d at 57 (lies and inconsistencies by driver as well as demeanor change during questioning were factors in probable cause to search vehicle); see also Powell, 929 F.2d at 1196 (driver's nervousness was a factor in probable cause to search vehicle). These factors, together with the alert by Riggs, established probable cause to search the Trailer without a warrant. Brown,500 F.3d at 57; Lopez, 380 F.3d at 544; Powell, 929 F.2d at 1196. Therefore, Claimant's assertion that his rights were violated by the search is without merit.

**CONCLUSION**

Claimant's motion to suppress is without merit. He has no standing to challenge the stop of the Trailer, and the warrantless search of Trailer was constitutionally permissible because the law enforcement agents had probable cause to believe that the Trailer contained contraband. Accordingly, the government respectfully requests that this Court deny Claimant's Motion and allow this case to proceed to discovery, dispositive motions, and, if necessary, trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney,

By: /s/Nancy Rue
NANCY RUE
Assistant U.S. Attorney

Dated: February 8, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nancy Rue
Nancy Rue
Assistant United States Attorney

Date: February 8, 2008