UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,
          Plaintiff,
     v.                                    CIVIL ACTION NO.
                                           07-11194-MBB
$572,204 IN UNITED STATES
CURRENCY, MORE OR LESS
          Defendant.

**MEMORANDUM AND ORDER
RE: MOTION TO SUPPRESS
(DOCKET ENTRY # 14)**
March 31, 2009

**BOWLER, U.S.M.J.**

On December 13, 2006, law enforcement personnel seized
$572,204 in United States currency from a horse trailer following
a traffic stop.  The stop and subsequent search and seizure
occurred as the result of a joint Drug Enforcement Agency ("DEA")
and Massachusetts State Police ("MSP") investigation involving
the surveillance of suspected drug trafficking activity.  On
January 23, 2008 claimant Winston H. Conkling ("claimant") filed
the instant motion to suppress (Docket Entry # 14) and supporting
memorandum (Docket Entry # 15) seeking the exclusion of all
evidence obtained during the traffic stop and the search of his
trailer based on alleged Fourth Amendment violations.[1]  On

---

[1] The motion (Docket Entry # 14) refers to the Massachusetts
Declaration of Rights, Massachusetts General Laws ("G.L.")
chapter 272, section 99 (state wiretap statute) and G.L. chapter
214, section B (right to privacy).  These claims are undeveloped
within claimant's memorandum (Docket Entry # 15) and argument.
As such, this court will not address them here.  See generally
Higgins v. New Balance Shoe, Inc., 194 F.3d 252, 260 (1st Cir.
1996) (the court "is free to disregard arguments that are not
adequately developed").

February 8, 2008, the government filed its memorandum in opposition.  (Docket Entry # 18).

On February 12, 2008, this court conducted a non-evidentiary hearing and took the motion under advisement.[2]  A motion to suppress evidence in this case is appropriate because the Fourth Amendment's exclusionary rule extends to civil forfeiture proceedings.  See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965).  The Civil Asset Forfeiture Reform Act, ("CAFRA"), reflects the Fourth Amendment's protections in requiring that seizures be made with a warrant, or that warrantless seizures be based on probable cause and pursuant to a lawful arrest or search.  See 18 U.S.C. § 981(b)(2)(B). Challenges to a search and seizure, that is, whether probable cause exists to support the belief that property is subject to forfeiture at the time it is seized, are brought pursuant to a motion to suppress under the rules of criminal procedure, not via a motion to dismiss.  See United States v. $50,040 in U.S. Currency, 2007 WL 1176631 at *3 (N.D.Cal. April 20, 2007); see also United States v. $78,850 in U.S. Currency, 444 F.Supp.2d 630, 635-637 (D.S.C. 2006).

---

[2] Within his motion (Docket Entry # 14), claimant seeks an evidentiary hearing.  An evidentiary hearing is only necessary if "the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." U.S. v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).  There is no such showing made here, the basic facts are undisputed.

FACTUAL BACKGROUND[3]

1.  The Surveillance

Beginning on December 12, 2006, DEA agents and MSP drug unit members were conducting surveillance on a hotel ("the hotel") in Braintree, Massachusetts.  In the early morning hours of December 12, 2006, surveillance agents observed a white male ("WM1") speaking on a cellular telephone in the hotel parking lot, while standing next to a white F-250 pick-up truck ("the truck") with an attached horse trailer ("the trailer"), both bearing Colorado license plates.  Both vehicles were registered to claimant. Shortly thereafter, another white male ("WM2") driving a U-Haul truck ("the U-Haul") bearing Arizona plates pulled up next to WM1, who entered the U-Haul truck which departed the hotel lot. The U-Haul was rented in Colorado by James Maliawco ("Maliawco") and Corey Young ("Young").

In the morning of December 13, 2006, surveillance agents observed a grey Lincoln Navigator ("the Navigator") bearing Massachusetts plates enter the hotel parking lot.  The Navigator was rented by Adam Koenigsberg ("Koenigsberg").  Koenigsberg exited the Navigator and carried a duffel bag into the hotel,

---

[3]   The undisputed facts relevant to the instant motion are drawn entirely from the Affidavit of Special Agent Jeffrey Commander ("the affidavit") filed along with the complaint (Docket Entry # 1, Exhibit 1), incorporated by reference within claimant's memorandum (Docket Entry # 15) as "anticipated facts" and within the government's opposition (Docket Entry # 18).

then soon came out of the hotel carrying the same duffel bag and left the parking lot in the Navigator.  A check of Koenigsberg's record revealed several drug related convictions.  Surveillance agents then interviewed hotel personnel who confirmed that claimant had paid cash for two rooms on December 12, 2006, but that one room appeared unused and that claimant had checked out while his truck and trailer remained in the parking lot.

Around noon on December 13, 2006, surveillance agents observed Maliawco and Young in a Land Rover ("the Land Rover") pulling alongside the truck.  Both exited the Land Rover, opened the door to the trailer and placed two or three duffel bags inside.  A short while later, the Navigator driven by Koenigsberg entered the hotel parking lot and pulled up next to the trailer. Koenigsberg was observed handing Maliawco a duffel bag, which Maliawco placed in the trailer, the Navigator then departed the parking lot.  Shortly thereafter, both the truck and the Land Rover left the hotel parking lot, the truck returned to the hotel parking lot shortly thereafter to pick up the trailer and departed with the trailer in tow.  The truck and trailer stopped briefly in the South Shore Mall parking lot in the late afternoon, then exited the mall parking lot toward the highway. Surveillance was maintained into the early evening of December 13, 2006, when the truck and trailer were pulled over by the MSP on Interstate 90 in Weston, Massachusetts.

4

2.   The Stop

Young was pulled over for a marked lane violation by MSP
Trooper Charles Kane ("Trooper Kane"), at approximately 6:00 p.m.
Young was the only occupant of the vehicle.  Young told Trooper
Kane that he was "weaving" because the trailer was so big.
Trooper Kane observed that Young was very nervous and that his
hands were shaking.  Trooper Kane asked Young several questions,
such as why there were no horses in the trailer or if there was
anything in the trailer.  Young responded that he didn't know
what was in the trailer, but that it was his boss "Bill's" who
had flown back to Colorado from Boston.  Young stated that his
friend had dropped off horses in Boston, but he didn't know where
they were.  Young said that he had flown in from Colorado to
Boston on December 11, 2006, to drive the truck and trailer back
to Colorado, but produced a plane ticket dated December 12, 2006.

Trooper Kane asked Young about the locked side door on the
trailer, which made Young visibly nervous.  Young told Trooper
Kane that he did not have the keys to the lock on the trailer
side door.  When Trooper Kane tried the trailer door, Young
stated, "This is getting bad."  Trooper Kane removed his trained
K-9 German Shepard, Riggs, from his patrol car and led Riggs
around the truck and trailer.  Riggs is a properly certified and
trained narcotics dog that has successfully located drugs several
times before with exterior alerts.  Riggs immediately alerted to

the locked side door of the trailer.

3.  The Search and Seizure

     After Riggs alerted to the side door of the trailer, Trooper
Kane and MSP Trooper Thomas Duane ("Trooper Duane") opened the
door with a crowbar.  Just inside the door they found two duffle
bags and a shoe box containing a large sum of money, later
determined to be $572,204 in U.S. currency.  Trooper Kane entered
the trailer and found three empty duffle bags containing
marijuana residue.  Trooper Kane also noticed that the carpet was
saturated with oil and that the windows and vents were sealed
shut with duct tape.  The trailer was seized, the funds were
seized and Young was given a warning for a marked lane violation.
No arrests were made and no criminal charges were brought against
any of the persons involved.

                              DISCUSSION


A.  Did Traffic Stop Violate Claimant's Fourth Amendment Rights?

     Claimant argues that the truck driven by Young was stopped
by Trooper Kane without probable cause or reasonable suspicion,
but rather as a pretext to investigate other crimes.  This court
must disagree.  The Fourth Amendment requires that traffic stops
by police and the resulting temporary detention of individuals
for questioning be reasonable, that is, based on probable cause
to believe that a traffic violation has occurred.  See Whren v.

United States, 517 U.S. 806, 810 (1996); see also Delaware v.
Prouse, 440 U.S. 648, 653 (1979).

The detention of a motorist based on probable cause does not
violate the Fourth Amendment's prohibition on unreasonable
seizures even if an officer would not have stopped the motorist
absent some additional law enforcement objective.  Whren, 517
U.S. at 812-813.  This premise effectively forecloses any
argument that pretext might invalidate an otherwise justified
traffic stop.  See U.S. v. Andrade, 94 F.3d 9, 12 (1st Cir.
1996).  Young's marked lane violation for admittedly "weaving" on
the highway provided probable cause to stop him for violating the
traffic laws.  Further, Trooper Kane had ample reasonable
suspicion, based on surveillance by fellow officers observing
what they believed to be consistent with drug trafficking and
collection of drug proceeds, to stop the truck and investigate.
See United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)(agents
may stop a moving automobile to investigate their reasonable
suspicion that the occupants were engaged in criminal activity);
see also United States v. Capelton, 350 F.3d 231, 240 (1st Cir.
2003) ("fellow officer rule" provides that "knowledge may be
imputed from DEA agents to the state police who actually
effectuated the stop").

This court credits Trooper Kane's reasonable suspicion that
a crime had occurred and his contention that he observed a

7

traffic violation and finds that the stop was justified and not invalidated by pretext.[4]  Under Whren, the inquiry need not proceed any further than a finding by the court of probable cause.  Andrade, 94 F.3d at 12.  See also U.S. v. Miller, 589 F.2d 1117 (1st Cir. 1978) cert. denied, 440 U.S. 958 (1979)(a mixed motive for a stop is irrelevant once finding of probable cause is made).

Even assuming that probable cause or reasonable suspicion do not support the traffic stop, claimant lacks any "standing" to assert his Fourth Amendment rights to suppress it.[5]  As stated by the court in Alderman v. United States, 394 U.S. 165, 174 (1969), "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  See Rakas v. Illinois, 439 U.S. 128, 133 (1978).  A claimant aggrieved only by the introduction of damaging evidence secured by the stop and search of another person has not had any of his

---

[4]  The court distinguishes this case from those cited by claimant, namely, U.S. v. Freeman, 209 F.3d 464 (6th Cir. 2000) (holding that one isolated incident of partially weaving into emergency lane does not constitute a traffic violation in Tennessee), and U.S. v. Gregory, 79 F.3d 973 (10th Cir. 1996) (same in Utah), as these are inapplicable to the specific facts and law in this case.

[5]  There is a noteworthy difference between the threshold issue of standing of third parties contemplated in civil forfeiture cases and what the courts have labeled "standing" in the context of search and seizures involving substantive Fourth Amendment rights.  This case involves the latter.  See generally United States v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991).

Fourth Amendment rights violated, thus may not benefit from the exclusionary rule's protection.  <u>See</u> <u>Rakas</u>, 439 U.S. at 134. It is the movant's burden to show "standing," that is, "that the challenged governmental action infringed upon his *own* Fourth Amendment rights."  <u>Kimball</u>, 25 F.3d at 5 (emphasis supplied).

In this case, claimant was not present during Trooper Kane's stop of the truck driven by Young, nor was he present for the ensuing search of the trailer.  At the time of the stop, Young was the only occupant of the vehicle.  In fact, the record indicates that the claimant "flew back to Colorado" before the stop had occurred.  As such, claimant's own "freedom from random, unauthorized, investigatory seizures" has gone largely undisturbed.  <u>Michigan Department of State Police v. Sitz</u>, 496 U.S. 444, 462 (1990); <u>see</u> <u>Prouse</u>, 440 U.S. at 657.  Thus, claimant has not met his burden to prove "standing" to assert his Fourth Amendment rights and the motion to suppress fails on this point.

B.  <u>Assuming Valid Traffic Stop, Did Search Exceed Scope of Lawful Intrusion where Claimant had Legitimate Expectation of Privacy</u>?

Claimant argues that even assuming that the traffic stop was valid at its inception, the seizure of Young and subsequent search of the trailer exceeded the constitutional limitations of

the Fourth Amendment and, as such, the fruits of that search must be suppressed.  Again, this court disagrees.

First, claimant argues that the temporary detention and questioning of Young by Trooper Kane was not "reasonably related in scope to the circumstances which justified the interference in the first place."  Terry v. Ohio, 392 U.S. 1, 20 (1968).  Rather, claimant states that the stop was unlawfully "prolonged beyond the time reasonably required."  Illinois v. Caballes, 543 U.S. 405, 407 (2005).  As claimant's memorandum (Docket Entry # 15) correctly states, however, police may further detain a driver when "reasonable suspicion exists that the driver is engaged in criminal activity."  United States v. Guerrero-Espinoza, 462 F.3d 1302, 1307 (10th Cir. 2006).

Such reasonable suspicion exists, thereby providing an alternative ground to deny the instant motion.  Young's nervous behavior, his inaccurate responses to questioning, his statement "this is getting bad" and knowledge by Trooper Kane of the surveillance of Young's conduct during the previous days provided abundant justification for a prolonged detention and questioning. See Illinois v. Wardlow, 528 U.S. 119, 119-120 (2000) ("reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior" such as "nervous, evasive behavior").  Notwithstanding this finding, and as this court has already held, claimant lacks "standing" to assert his

Fourth Amendment rights and thus may not challenge the stop and "seizure" of Young.  As the record makes clear, none of the events occurring prior to the search of the trailer even involves claimant's *own* constitutional rights.

Second, claimant asserts that the search of the trailer unconstitutionally invaded his expectation of privacy with regard to its contents.  Although claimant does not have the requisite "standing" to challenge the stop and detention of Young, he *does* have a constitutional right to challenge the search of the trailer, as its owner.  See United States v. Ruiz, 345 F.Supp.2d 171, 173 (D.Mass. 2004); accord United States v. Powell, 929 F.2d 1190, 1196 (7th Cir. 1991).  Application of the Fourth Amendment usually depends on whether the person invoking its protection can claim a "reasonable" and "legitimate expectation of privacy." Smith v. Maryland, 442 U.S. 735, 735 (1979); see also Katz v. United States, 389 U.S. 347, 361 (1967).

Motor vehicle searches, however, represent an exception to the constitutional protections provided for the expectation of privacy usually associated with a person's home or office. Miller, 589 F.2d 1124-1125; see also Coolidge v. New Hampshire, 403 U.S. 443, 445 (1971).  As set out by the First Circuit in United States v. Lopez, 380 F.3d 538 (1st Cir. 2004), a "warrantless search of an automobile will be upheld if 'officers have probable cause to believe that the vehicle contains

contraband.'" <u>Lopez</u>, 380 F.3d at 543 (quoting <u>United States v.
Ross</u>, 456 U.S. 798, 808 (1982)).  It is the government's burden
to prove the lawfulness of the search.  <u>See Lopez</u>, 380 F.3d at
543.  More specifically, the government must demonstrate that
"law enforcement officers had 'a belief, reasonably arising out
of circumstances known to the seizing officer [that an automobile
or other vehicle] contains that which by law is subject to
seizure and destruction.'" <u>Id</u>. (quoting <u>Carroll v. United States</u>,
267 U.S. 132, 149 (1925)).

      At the time of the search of claimant's trailer, Trooper
Kane knew several things.  Trooper Kane knew of the surveillance
conducted on the trailer over the two previous days, he knew that
the observed behavior was consistent with drug trafficking and he
knew that the driver was visibly nervous, untruthful when
questioned and seemingly unaware of the contents of the trailer
he was pulling.  When Trooper Kane inquired about the side door
of the trailer, the driver became very nervous and stated "Oh
(expletive) this is bad."  Additionally, Trooper Kane had a
narcotics dog, Riggs, in his cruiser.  After an initially
unsuccessful attempt at opening the side door of the trailer,
Trooper Kane retrieved Riggs and led the trained K-9 around the
exterior of the truck and trailer.  Riggs alerted to the side
door of the trailer.  With the help of Trooper Duane, Trooper
Kane opened the trailer side door with a crowbar and discovered

the currency at issue, along with marijuana residue.

The alert by Riggs alone likely provided the necessary probable cause to search the trailer.  See United States v. Brown, 500 F.3d 48, 57 (1st Cir. 2007) (a "reliable canine sniff outside a vehicle can provide probable cause to search the vehicle").  Taken with the entirety of the aforementioned circumstances known to Trooper Kane at the time in question, there is overwhelming support for the seizing officer's belief that there was in fact contraband in the trailer.  As such, this court finds that the government has met its burden and that the search of claimant's trailer was lawful.

## CONCLUSION

In accordance with the foregoing discussion, the motion to suppress (Docket Entry # 14) is **DENIED.**

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

13